UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JEANINE BATCHELDER, an
individual,

     Plaintiff,

v.                         Case No.:  2:24-cv-344-JLB-KCD

COLLEGE PARK
REHABILITATION AND
NURSING CENTER, LLC,

     Defendant.
_____/

## ORDER

     Before the Court is Defendant College Park Rehabilitation and Nursing Center, LLC's Motion to Set Aside a Default.[1] (Docs. 15.)[2] Plaintiff Jeanine Batchelder responded in opposition (Doc. 16), making this matter ripe. For the reasons below, the motion is granted.

### I. Background

     College Park Rehabilitation employed Batchelder as an occupational therapist. She developed a musculoskeletal disability that required her to wear

---

[1] Under 28 U.S.C. § 636(b)(1)(A), this motion was referred to the undersigned for disposition by an order subject to any Rule 72(a) objections. *See* Local Rule 1.02; *see also Bell v. Chambliss*, No. 3:13-CV-479-J-34JBT, 2015 WL 5997047 (M.D. Fla. Oct. 14, 2015).

[2] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

a specialized boot. Batchelder's supervisor allegedly refused to let her wear the boot as a reasonable accommodation. She complained, but her complaints were supposedly ignored or denied, and she was later terminated. Batchelder now sues for discrimination and retaliation under the Americans with Disabilities Act and the Florida Civil Rights Act. (Doc. 1.)

Defendant never answered the lawsuit, and a clerk's default followed. (Doc. 10.) Batchelder then sought a final judgment. (Doc. 11.) The Court entered a Report and Recommendation granting default judgment as to Defendant's liability. And as for damages, the Court recommended awarding $59,620.84 in back pay, with Batchelder's request for front pay and punitive damages unsettled pending an evidentiary hearing. (Doc. 12.) Defendant later received the Report and Recommendation and appeared in the case. (Docs. 13, 14.) Defendant now seeks to set the clerk's default aside. (Doc. 15.)

The Court recounts Defendant's explanation of what happened that led to the default. (Doc. 17 at 11.)

The first notice of Batchelder's claims came from the EEOC via an encrypted link in January 2024. Defendant's Regional Rehab Director, Leon Yagudayev, received the link but never forwarded it to the proper parties. He left the company a month later.

This lawsuit was filed several months later, and the summons and complaint were served on Defendant through its registered agent on April 30,

2024. (Doc. 8.) Thus, a response to the complaint was due by May 21, 2024. *See* Fed. R. Civ. P. 12(a)(1)(A)(i).

On May 1, 2024, the complaint was received by Yossy Markowitz of Excelsior Care Group, the management company for Defendant's facility. Markowitz had never seen an employment discrimination claim, and first believed it was a worker's compensation matter. Markowitz took several actions that day. He contacted Defendant's Administrator and Regional Human Resource Director to ask about the claim and learned that it involved an injury Batchelder received outside of work. Markowitz then contacted the Risk Manager to determine whether she had any information. Once Markowitz was told this was not a worker's compensation issue, he immediately contacted Defendant's insurance broker to report the claim so they could determine coverage and retain defense counsel.

A few days later, Markowitz followed up with the insurance broker. He received a response asking about the prior EEOC proceedings. This was the first time Markowitz heard of the EEOC charge. From May to early July, Markowitz and the insurance carrier continued to discuss the claim, including exchanging documentation and information. The carrier would not retain counsel until coverage was confirmed.

Markowitz then received the Report and Recommendation ("R&R") on July 10, 2024. With the R&R recommending a default judgment, Markowitz

independently sought counsel while Defendant's insurance carrier continued the investigation. Just over two weeks after receiving the R&R, a notice of appearance for Defendant was filed. Coverage was ultimately confirmed.

Defendant argues the delay "in responding to the Complaint was not intentional as [it] diligently worked alongside its insurance carrier to obtain coverage and retain counsel." (Doc. 16 ¶ 17.) Defendant also argues that it has meritorious defenses.

## II. Legal Standard

Federal Rule of Civil Procedure 55 provides that a district court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "Good cause is a mutable standard, varying from situation to situation." *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). "It is also a liberal one—but not so elastic as to be devoid of substance." *Id.* The defaulting party bears the burden of establishing good cause. *See Afr. Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999).

Although not "talismanic," factors in the good cause analysis include "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Compania Interamericana*, 88 F.3d at 951. Also instructive is "whether the defaulting party acted promptly to correct the

default." *Id; see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337 n.7 (11th Cir. 2014). This test is measured against the backdrop that defaults are disfavored because of the "strong policy of determining cases on their merits." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). For that reason, any doubts regarding whether to set aside a default should be resolved in favor of the party seeking relief. *Davis v. Parkhill-Goodloe Co.*, 302 F.2d 489, 495 (5th Cir. 1962).

### III. Discussion

Batchelder's only argument against setting aside the clerk's default is an evidentiary issue. She claims Defendant's motion is "based entirely on the unsupported statements of counsel, which are not evidence." (Doc. 16.) But Defendant has since filed a sworn version of its motion (Doc. 17), thus leaving her argument moot.

With that out of the way, applying Rule 55(c), as the Court must, the clerk's default cannot stand.  For starters, the record does not reveal willful conduct. *See Compania Interamericana*, 88 F.3d at 951-52 ("[I]f a party willfully defaults . . . the court need make no other findings in denying relief."). Willful conduct is "either an intentional or reckless disregard for the judicial proceedings." *Id.* at 951. Defendant did not respond to the lawsuit because it was waiting for the insurance company to retain counsel and provide a defense. The Court declines to punish Defendant for the delay caused by its insurance

carrier, especially considering Defendant later took action when the delay became prejudicial. A better characterization of what occurred here was negligence. And good cause "encompasses situations in which failure to comply with a filing deadline is due to negligence." *Carmody v. MHM Sols., Inc.*, No. 08-14198-CIV, 2008 WL 2844038, at \*1 (S.D. Fla. July 23, 2008).

Hearing this case on the merits is also appropriate because Defendant offers at least colorable defenses to the claims. (Doc. 17 at 8-9.) Even "a hint of a suggestion of a meritorious defense" renders the defense colorable. *Bank of New York v. Brunsman*, 683 F. Supp. 2d 1300, 1303 (M.D. Fla. 2010) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 n.4 (5th Cir. 1979)).

Finally, the Court is satisfied Defendant acted promptly. Although some time passed between Defendant learning of the default and moving to set it aside, Defendant was not idle during that time. Markowitz took immediate action to hire an attorney once learning of the R&R while the insurance carrier continued their investigation. Considering this timeline, the Court is satisfied Defendant did not sit on its hands.

Weighing the facts surrounding Defendant's default and the Eleventh Circuit's "strong policy of determining cases on their merits," the Court concludes that the clerk's default should be set aside. *Perez*, 774 at 1339.

Accordingly, it is now **ORDERED**:

1.     Defendant's Motion to Set Aside Clerk's Default (Doc. 15) is **GRANTED**.

2.     The Clerk is **DIRECTED** to set aside the clerk's default (Doc. 10).

3.     Because the default is set aside, the Clerk is further **DIRECTED** to vacate the Report and Recommendation (Doc. 12) that recommends a final judgment be entered and to terminate the motion for default judgment (Doc. 11).

4.     Defendant is directed to respond to the complaint by **August 2, 2024**.

**ENTERED** in Fort Myers, Florida on August 19, 2024.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

7